## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **WILLIAM S. EDENS** | ) |
| **35410 Wilderness Shores Way** | ) |
| **Locust Grove, VA 22508** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Civil Action Number _____** |
| | ) |
| **UNITED STATES POSTAL SERVICE** | ) |
| **475 L'Enfant Plaza SW** | ) |
| **Washington, DC 20260-0004** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff William S. Edens (hereinafter, "Plaintiff," or "Mr. Edens"), by and through

undersigned counsel, hereby files this Complaint for judicial review of adverse

personnel actions taken against him by Defendant United States Postal Service

(hereinafter, "Defendant" or "USPS").

### I.     INTRODUCTION

1.     Plaintiff, an experienced award-winning USPS mail carrier, complains that he has

been wrongfully harmed by certain adverse personnel decisions taken against him by

Defendant, based on (1) Administrative Procedure Act ("APA") lack of reasoned

decision-making; (2) an *Accardi* doctrine violation of Defendant's own regulations; and

(3) deprivation of procedural due process constitutional rights.

2.     Plaintiff's APA claim is brought pursuant to the doctrine of judicial estoppel by

which Defendant waived its right under 39 U.S.C. § 410 to be exempt from the APA.

*See Sears, Roebuck & Co. v. USPS*, 844 F.3d 260, 265 (D.C. Cir. 2016).

3.      Plaintiff's *Accardi* claim is based on the USPS's violation of USPS Employment

Handbook, EL-312, Section 521, requiring before any disqualification based on

derogatory information, that an applicant for USPS employment be provided with a letter

of inquiry.  Such a letter of inquiry must state the alleged facts with enough specificity to

enable the applicant to understand the details of the suitability concern and to respond.

No letter of inquiry was provided to Mr. Edens before he was dismissed as a

probationary employee.  An *Accardi* claim may be raised as a substantive due process

allegation or a stand-alone claim.  *Jefferson v. Harris*, 285 F. Supp. 3d 173, 184 (D.D.C.

2018) (citing cases).

4.      Plaintiff's procedural due process claim alleges a violation of his liberty interest

based on a "stigma plus" theory entailing a continuing stigma or disability arising from

official complaints and other actions initiated by Postmaster Rachel Shiflett in retaliation

against Mr. Edens for his disclosures to the USPS Office of Inspector General ("OIG")

concerning Ms. Shiflett's scheme to award paid extra trips to contractor postal carriers

on a discriminatory basis.  The complaints about Mr. Edens were never disclosed to him

(he later learned of their existence, but not pertinent details, through a Freedom of

Information Act ("FOIA") request); and he did not have any meaningful opportunity to

respond.  The derogatory information from the investigation(s) initiated by the

postmaster led to a decision not to renew Mr. Edens' contract route, as well as a

decision by the Postal Inspection Service ("PIS") not to grant Mr. Edens a low-level

security clearance, leading to his termination as a probationary postal employee mail

carrier, the position he last held at the USPS.

5.      Plaintiff seeks declaratory and injunctive relief, including reinstatement as a postal employee and removal of the derogatory information in his file resulting from Postmaster Shiflett's retaliation.

## II.      PARTIES

6.      Mr. Edens, who at relevant times was a postal carrier under contract to the USPS in Locust Grove, Virginia and subsequently a probationary employee of the USPS in Lexington, Virginia, is a resident of the Commonwealth of Virginia.  He resides at 35410 Wilderness Shores Way, Locust Grove, Virginia 22508.

7.      Defendant USPS is an independent establishment of the executive branch of the United States federal government, *see* 39 U.S.C. § 201, responsible for providing postal service in the United States.  The USPS maintains its headquarters at 475 L'Enfant Plaza, SW, Washington, DC 20590.

## III.      JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 39 U.S.C. § 409(a).

9.      This Court has personal jurisdiction over the USPS, as its headquarters is located in the District of Columbia.

10.      Venue is proper in this case under 28 U.S.C. § 1391(b)(1) because the Defendant resides in the District of Columbia and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia.

## IV.   FACTS

11.    Plaintiff Edens has been an experienced, award-winning contract mail carrier for the USPS.  Edens has extensive experience in mail operations, including work experience from 1991-1999 with the Inspector General, Department of Defense where he received excellent performance reviews, was trained in work-related computer software and management/employee relations, and held a secret security clearance. He began work for the USPS at Locust Grove, Virginia 22508 first as a temporary contractor (1999-2000) and then as a Casual Clerk (2000).

**A.    Mr. Edens' Contract Experience at Locust Grove, Virginia**

12.    In October 2000, Mr. Edens received his first permanent contract at Locust Grove (HCR071).  He then successfully bid on a contract for route HCR074 also at Locust Grove, which was renewed three times. In 2003, Mr. Edens received the Eagle Spirit Award while under Postmaster Faye Potter, and in 2011, he received a $500 cash award while under Postmaster Lewis Todd Owens.

13.    After Mr. Edens' very successful years as a contract letter carrier on route HCR074 from 2000 to 2013, things were about to take a turn for the worse when Rachel Shiflett became the Locust Grove Postmaster in December 2013. Mr. Edens came to realize that Ms. Shiflett was running a discriminatory scheme to award paid extra trips selectively to her postal contractors to give the contractors compensation beyond the terms of their contracts. In the Fall of 2017, Mr. Edens told Ms. Shiflett he intended to file a Fraud, Waste and Abuse ("FW&A") complaint about the scheme through the Office of Inspector General ("OIG") Hotline. The first of his complaints was made on October 9,

2017.  See Exhibit A – copies of five FW&A complaints filed by Plaintiff and OIG Report on FW&A complaints.

14.     Upon information and belief, on October 20, 2017, Rachel Shiflett made a formal request that Mr. Edens' contract not be renewed.  Ironically, also on October 20, Mr. Edens received a satisfactory contractor background review.

15.      As part of the OIG investigation of Mr. Edens' FW&A Hotline complaints, Mr. Edens was interviewed twice, once on October 30, 2017, and a second time on December 1, 2017.  Upon information and belief, as part of the FW&A complaint investigation, Ms. Shiflett was interviewed on January 11, 2018.

16.     Following OIG's investigative interview of Ms. Shiflett on January 11 about her practices at Locust Grove, she wasted no time and that same day initiated an Assault and Threat Specialty Report ("ASTR") investigation against Mr. Edens and a general Suitability investigation of Mr. Edens regarding his suitability to remain a USPS contractor.  On the next day January 12, the ASTR investigation was concluded reporting that "there was no evidence that a credible threat, assault or criminal violation occurred."  See Exhibit B – ASTR investigation documents and report. The suitability investigation resulted in a January 24, 2018 report concluding that Mr. Edens' contract not be renewed. The conclusion was delivered to Mr. Edens in an "interview" by PIS agents Heidi Dalton and J. Bond on January 23, 2018.  See Exhibit C – Suitability investigation report and report of Plaintiff's interview.  Mr. Edens was not notified that he was under any investigation until his interview, and he had no opportunity to rebut any allegations against him.  He obtained copies of the redacted reports in Exhibits B and C through FOIA requests.

17.     The Report of the January 23, 2018, interview of Mr. Edens is filled with false and misleading statements and omissions, including a total misrepresentation of the basis for Mr. Edens' FW&A complaints.  The interview report describes Mr. Eden's FW&A complaint as concerning jokes told about Muslims and never mentions that the true basis for the complaints was Ms. Shiflett's discriminatory "extra trips" policy.  *Id.*

18.     On January 23, 2018, Mr. Edens was informed in writing that his contract would not be renewed.  Sensing that the PIS investigation of him had been initiated by Rachel Shiflett in retaliation for his FW&A complaints to the OIG, Mr. Edens made two Hotline complaints to the OIG on January 23, and January 26, 2018.  However, on March 27, 2018, the OIG decided that his complaint was "an individual matter by a contractor and therefore did not need an intervention by the OIG," and that instead "the matter should be addressed through the contactor's supervisor/employer."  See Exhibit D – OIG hotline documents.  Mr. Edens was not provided with this report, but he obtained a copy through a FOIA request.

19.     On March 23, 2018, the OIG concluded its FW&A investigation into Ms. Shiflett's extra trip policies and made a referral to USPS management for possible action.  Upon information and belief, no action was taken against Ms. Shiflett.  See Exhibit A.

20.     Becoming increasingly frustrated with the hostility in his work environment created by Rachel Shiflett, Mr. Edens resigned his route on March 30, 2018.  He was not aware at that time that he was under any PIS investigation.

21.     In early February, Mr. Edens' contract went out for public bid. The solicitation stated late bids would not be accepted. It closed in early March. On March 9, 2018, the Contracting Officer asked Mr. Edens why he did not bid on his route and asked him to

submit a bid. Mr. Edens submitted a bid, but the Contracting Officer, with input from

Rachel Shiflett, made an award to another bidder who started on April 10, 2018.  The

rejection of Mr. Edens' bid is a direct result of Ms. Shiflett's actions.

22.     If the Contracting Officer had not raised Mr. Edens' hopes by requesting that he

bid on the route contact, Mr. Edens believes he would have remained on his contract

until its expiration on June 30, 2018**.**  He planned to finish his contract. But since the

Contracting Officer called him, he thought everything was cleared and did not

understand why he was not awarded the new contract thereafter as a result.

23.     May 16, 2018, Mr. Edens received a notice that his contract would be terminated

for default unless he resumed his duties by April 7.  See Exhibit E – Contract

termination notices (and corrected notice version).  Had he received timely notice of the

pending default and request to complete the contract, he believes he would have

considered returning by the April 7 deadline. Mr. Edens believes the initial notice was

intentionally sent to him late so he could not return by April 7 because the Contracting

Officer already had a deal with another contractor to start on April 10.  He received a

final notice of termination thereafter. *Id.*  The late notice is part of a series of

irregularities by USPS that deprived Mr. Edens of his due process rights.

## B.     Mr. Edens' Hiring and Dismissal as a Probationary Employee

24.     On or about June 25, 2019, Mr. Edens was hired by the USPS as a mail carrier,

working out of Lexington, Virginia (probationary status).

25.     On August 21, 2019, Mr. Edens received a letter from the PIS informing him that

he had received an unfavorable background check, and thus he did not meet the

security requirements of his position.  See Exhibit F – background check and dismissal

notices. The letter noted that he could appeal within 30 days.  Later, Mr. Edens received a letter dated August 28, 2019 informing him of his dismissal from his probationary position because of an unsatisfactory background check.  *Id.*

26.    The unsatisfactory background check of Mr. Edens for his employment at Lexington, Virginia ignored relevant facts, particularly, Mr. Edens' stellar record before Rachel Shiflett became Postmaster at Locust Grove in December 2013.  This is particularly glaring in that at Lexington, Mr. Edens would not have to deal with Rachel Shiflett.  Even USPS management in reacting to the non-renewal of his contract route, noted Mr. Edens' "spotless" record.  A January 22, 2018 email from Aurora, CO contained the comment: "I know the supplier, he will try to fight this, he has been the supplier of this contract for 15-20 years (don't know the exact date) his record was spotless until recent events – can he fight this?"

27.    Edens, through counsel, submitted his appeal on September 20, 2019, arguing that the USPS failed to follow USPS Employment Handbook, requiring before disqualification that applicant be given a letter of inquiry in which the facts are stated with enough specificity to enable the applicant to understand the details of the suitability concern.

28.    The applicable regulations, as spelled out in Mr. Edens' appeal letter are included in USPS Employment Handbook, EL-312, Section 521 which provides in pertinent part:

> **521 Suitability Determination With Information Not From Application**
>
> Before applicants may be disqualified on the basis of derogatory information other than that in the application, they must be given an opportunity to comment on the information.

This opportunity is provided by a letter of inquiry in which the facts are stated with enough specificity to enable the applicant to understand the details of the suitability concern. However, the letter must not reveal sources of information and must be worded in such a way that the eligible is unable to determine the identity of the source. Appendix A–2 contains a sample letter and statement to accompany a letter of inquiry.

*Exceptions:* Identity of sources may be disclosed when the information:

a. Is a matter of public record (i.e., records of federal, state, county, municipal, and other public jurisdictions).

b. Comes from law enforcement records.

c. Comes from federal personnel records obtainable by the eligible.

29.    Other grounds stated in his appeal were inaccuracies and lack of specificity in the basis for an unfavorable background check.  The notice stated in pertinent part:

After careful consideration and review, it has been determined that you do not meet the security requirements of the position.  It has been adjudicated unfavorable based on the following:

The applicant was the subject of a Postal Inspection Service Investigation and resigned while under investigation for misconduct and inappropriate behavior in the workplace.  The applicant was pending dismissal for duty prior to resignation.

You have the right to appeal this decision within 30 days from the date of this letter.  If an appeal is made, it must be submitted in writing and should include a detailed response to each of the allegations listed above.  [Exhibit F.]

30.    Numerous letters from Plaintiff's counsel to the PIS and the USPS Office of General Counsel requesting an update on the status of the appeal were ignored. Finally, a phone call from counsel in March 2020 had some success, and counsel was informed by a PIS agent that a written response would be forthcoming soon.

31.     By letter dated March 24, 2020, Edens' appeal was denied.  The denial letter indicated only that Edens resigned his route while he was the subject of a Postal Service investigation for misconduct and inappropriate behavior in the workplace, but provided no details.  The letter further indicated that "[r]eview of related materials indicated further investigation would have been conducted had you not resigned," But again provided no details.  Nothing in the denial letter addressed any of the substantive arguments made by Mr. Edens through counsel in his appeal.  See Exhibit G – Denial letter.

**C.     Mr. Edens' Unsuccessful Bids on USPS Contracts**

32.     Mr. Edens has unsuccessfully bid on three USPS postal carrier contracts.  His lack of success is due directly or indirectly to Rachel Shiflett's retaliatory actions against him.

33.     As stated above, in March of 2018, the Contracting Officer asked Mr. Edens to bid on the route that he had relinquished (HCR074), but when he bid, his bid was rejected as a result of Rachel Shiflett's influence and actions.

34.     In late 2019, Mr. Edens responded to an email solicitation for bids on the Locust Grove, Virginia route under contract number 224D3.  Despite his many years of excellent service on contract routes such as this, Mr. Edens was denied the contract. On information and belief, the contract was instead awarded to a contractor who had been part of Ms. Shiflett's "extra trips" policy.  Though their bid was apparently a lower cost than Mr. Edens', records obtained from FOIA request show that the winner of this contract from December 2019 to March 2020 earned several thousand dollars more on

Shiftlett's "extra trips" policy, thus bringing their charge for the route to a higher cost than Mr. Edens originally bid for the route.

35.    On September 26, 2020, Mr. Edens once again bid on the Locust Grove route under contract number 224D6.  Upon information and belief, Mr. Edens was the low bidder, but was not awarded the contract because of Rachel Shiflett's influence and actions.

**D.    Mr. Edens' Whistleblower Reprisal Complaint**

36.    By letter to the USPS Office of Inspector General ("OIG") dated May 22, 2020, Mr. Edens, by and through counsel, submitted a Hotline Whistleblower Reprisal Complaint pursuant to USPS Employee and Labor Relations Manual ("ELM") § 666.18.

37.    The USPS ELM 666.18 prohibits a reprisal for release of information:

> **666.18 Reprisal for Release of Information**
> No one may take or fail to take a personnel action, or threaten to do so, with respect to any employee or applicant for employment because the employee or applicant discloses information that he or she believes evidences:
> a. A violation of any law, rule, or regulation, or
> b. A gross waste of funds, gross mismanagement, an abuse of authority, or a substantial and specific danger to public health or safety.
>
> Disclosure of information that is specifically prohibited by law does not carry the protection described above. However, no disclosure under a. and b. above is prohibited by law if made to the Inspector General of the Postal Service. There can be no reprisal for disclosures to the Inspector General unless the complaint was made or the information disclosed with the knowledge that it was false or with willful disregard for its truth or falsity.

38.    By letter dated July 9, 2020, the USPS OIG informed Mr. Edens' counsel that it would not investigate the allegations in Mr. Edens' May 22, 2020 whistleblower complaint letter.  In its July 9 letter the OIG stated:

> We determined that Mr. Edens' allegation does not meet the criteria necessary for us to proceed with a whistleblower reprisal investigation. Mr. Edens' dismissal from the Lexington, VA Post Office during probationary status was attributed to not passing a U.S. Postal Inspection Service background investigation, a requirement for employment with the U.S. Postal Service. As a result, our office will be taking no further action regarding this reprisal allegation at this time.

## COUNT I: LACK OF REASONED DECISION-MAKING

39.    Plaintiff incorporates herein by reference his allegations contained in paragraphs 1-38, inclusive.

40.    The US Postal Service has asserted before this federal judicial circuit that its agency action is judicially reviewable under a "reasoned decision-making" standard. The Circuit Court of Appeals for the District of Columbia Circuit held such an admission by the agency to be a waiver of the agency's general exemption from the Administrative Procedures Act ("APA") judicial review provisions.[1]  Defendant's prior litigation position on judicial review in *Sears* would be inconsistent with any assertion of the USPS's exemption from review under that APA standard in this matter.  Moreover, the Court in *Sears* agreed with the USPS that its conduct was reviewable under "reasoned decision-making" standard.  Defendant USPS in this case would "derive an unfair advantage or impose an unfair detriment" on Plaintiff by asserting the Court's inability to review the agency's conduct under the APA "reasoned decision-making" standard, given

---

[1] See *Sears, Roebuck & Co. v. US Postal Serv.,* 844 F.3d 260, 265 (DC Cir. 2016) ("Although the Postal Service argues that '[t]his standard of review is 'extremely limited' and less intrusive than APA review,' *id.* the 'reasoned decision-making' standard it cites is the paradigm of APA review….[t]he judicial review provisions of the APA are not jurisdictional, so a defense based on exemption from the APA can be waived by the Government." Internal citations omitted.)

Defendant's prior agreement to this standard of judicial review in this circuit and given

that Plaintiff has exhausted his other means of seeking redress for Defendant's

violations of his rights and retaliation against him. Under the doctrine of judicial

estoppel, Defendant is therefore barred from claiming it is not subject to judicial review

under the APA.[2]

41.     Plaintiff has received a final agency action through the March 24, 2020 letter

from the Office of the General Counsel of the agency, denying Plaintiff's appeal of his

dismissal as a probationary employee.  Additionally, Plaintiff received final agency

action through the July 9, 2020 letter of the OIG refusing to open an investigation in

response to Plaintiff's Reprisal Complaint.

42.     As set forth herein in detail at ¶¶24-29, Defendant failed to follow its own

regulatory policy at USPS Employment Handbook, EL-312, Section 521 when it did not

provide Plaintiff with a Letter of Inquiry upon finding derogatory information in his

suitability background investigation and when it similarly did not allow Plaintiff an

opportunity to respond to any derogatory information cited.  Such a letter and

opportunity should have been provided to Plaintiff prior to the August 21, 2019 letter

stating he failed the background investigation.  The agency's blatant failure to follow its

---

[2] See *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010) ("There are at least three questions that a court should answer in deciding whether to apply judicial estoppel: (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?") (internal citations omitted).

own regulation evidences a lack of reasoned decision-making by the Defendant, which has resulted in Plaintiff's harm.

43.     Additionally, as set forth herein at ¶¶12-23, Defendant's actions including: Postmaster Rachel Shiflett's retaliatory actions against Plaintiff; Defendant's cover-up actions and lack of transparency to avoid correction of Postmaster Shiflett's retaliatory conduct; and the Office of the General Counsel's denial of Plaintiff's appeal from his unsatisfactory background check likewise evidence a lack of reasoned decision-making by Defendant, resulting in harm to the Plaintiff.

44.     Plaintiff had a right to file Fraud, Waste, and Abuse ("FW&A") complaints with the USPS; he provided notice to Postmaster Shiflett of his intent to do so; and she could have terminated her improper "extra trips" policy.  Instead, she refused, and as a result of Plaintiff's FW&A complaints, she retaliated against Mr. Edens by making a formal request that his contract not be renewed and initiating an ASTR investigation, as well as a Suitability investigation against Mr. Edens.  Although the ASTR investigation was concluded in Mr. Edens' favor, the Suitability investigation resulted in a conclusion not to renew his contract.

45.     It was further unreasonable decision-making by the USPS to facilitate and cover up Postmaster Shiflett's retaliation against Mr. Edens.  The Report of the January 23, 2018 interview with PIS agents to deliver the conclusions of the Suitability investigation is filled with false and misleading statements and omissions, including a total misrepresentation of the basis for Mr. Edens' FW&A complaints.  Exhibit C.  There is no question that Rachel Shiflett retaliated against Mr. Edens for his FW&A complaints, as she requested investigations of him immediately following her OIG January 11, 2018

interview concerning Mr. Edens' FW&A complaints.  The inescapable conclusion is thus that the nature of Mr. Edens' FW&A complaints were altered in the Interview Report to avoid a permanent record of Mr. Edens' complaints about Ms. Shiflett.

46.     Even after Mr. Edens' termination, the USPS continued to lack reasoned decision-making through ongoing cover-up of Postmaster Shiflett's retaliatory conduct by denying Mr. Edens' an opportunity to comment on derogatory information not in his application before he was disqualified for employment based on an unsatisfactory background check and, additionally, a denial of his appeal from the dismissal decision. The failure of USPS to issue a letter of inquiry and to allow an opportunity to comment suggests a cover-up because that disclosure process would have added Mr. Edens' version of facts to the record, thus exposing the retaliation by Postmaster Shiflett.

47.     Indeed, the notice of the unsatisfactory background check is itself suspect because it lacked specificity necessary for Mr. Edens to provide a meaningful response:

- At the time Mr. Edens resigned his contract route on March 30, 2018, he did not know he was under any PIS investigation, much less the reason for any such investigation;

- Mr. Edens later learned about the investigations initiated by Postmaster Rachel Shiflett by FOIA requests.  He had reason to believe that the investigation of the ASTR complaint that Rachel Shiflett initiated concluded in his favor on January 12, 2018.  He had reason to believe that the PIS investigation concluded with the non-renewal of his contract on or about January 23, 2018; and

- The statement that Mr. Edens "was pending dismissal for duty prior to resignation" makes no sense.  First, the language falsely suggests Mr. Edens

was an employee who could be "dismissed." Second, FOIA records do not

indicate that there was a pending investigation of Mr. Edens when he resigned

his contract route on March 30.

48.     The March 24, 2020 letter denying Mr. Edens' appeal also is irregular.  Exhibit G.

First, the letter offers no explanation either directly or indirectly of the long delay – over

six months – to a decision or of the failure to respond to counsel's numerous letters.

Second, the letter does not even acknowledge the arguments made in Mr. Edens'

appeal, much less respond to them; rather, it repeats the non-specific allegations in the

August 21 letter.  The denial letter does make a new allegation, similarly cryptic, that Mr.

Edens did not know about and could not possibly counter; namely, that review of

(unidentified) materials indicated that further investigation would have been conducted

had he not resigned.

49.     All of these irregularities summarized in the foregoing paragraphs, particularly as

they demonstrate the agency's non-transparency and violation of USPS regulations,

strongly suggest that the PIS did not want Mr. Edens to have a full and fair opportunity

to explain or counter the allegations against him on which his termination was based.

50.     Although Mr. Edens was not an employee or applicant for employment when he

made the FW&A disclosures, he nonetheless was later subjected to an adverse

personnel action when he was terminated as a probationary employee based on

derogatory information in his file that was placed there as a direct result of the

retaliatory actions of Postmaster Rachel Shiflett taken on January 11, 2018.

WHEREFORE: Plaintiff requests this Court enter a judgment:

- declaring that Defendant has acted contrary to reasoned decision-making; and

- vacating Defendant's August 21, 2019 finding of an unsatisfactory background investigation; and

- vacating Defendant's January 2018 adverse suitability investigation result; and

- ordering Defendant to investigate Postmaster Shiflett's retaliatory actions against Plaintiff; and

- ordering Defendant to correct the record in the January 24, 2018 suitability Investigative Memorandum (and exhibits); and

- ordering Defendant to reinstate Plaintiff as an employee; and

- awarding Plaintiff any other relief as the Court deems proper.

### COUNT II: *ACCARDI* CLAIM

51.    Plaintiff incorporates herein by reference his allegations contained in paragraphs 1-50, inclusive.

52.    An *Accardi* claim arises when an agency deprives an individual of his rights through violating its own procedures or regulations. *See Wilkinson v. Legal Services Corp.*, 27 F. Supp. 2d 32, 34 n.3 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954)) ("government agencies are bound to follow their own rules, even self-imposed procedural rules that limit otherwise discretionary decisions.").

53.    Defendant violated its governing regulations included in USPS Employment Handbook, EL-312, Section 521 when it did not provide Plaintiff with a Letter of Inquiry upon finding derogatory information in his suitability background investigation and when it similarly did not allow Plaintiff an opportunity to respond to any derogatory information cited.  Such a letter and opportunity were required by regulatory policy to have been

provided to Plaintiff prior to the August 21, 2019 letter stating he failed the background investigation.

54.    As a result of Defendant's failure to follow its own regulatory law, Plaintiff's constitutional right to due process was violated.

WHEREFORE: Plaintiff requests this Court enter a judgment:

- declaring that Defendant violated its own governing regulations and violated Plaintiff's constitutional rights; and

- vacating Defendant's August 21, 2019 finding of an unsatisfactory background investigation; and

- ordering Defendant, upon reinstatement of Plaintiff for employment, to follow the USPS Employee Handbook and all other applicable governing law, particularly with regard to future suitability investigations of Plaintiff's background; and

- awarding Plaintiff any other relief as the Court deems proper.

### COUNT III: DENIAL OF PROCEDURAL DUE PROCESS RIGHTS

55.    Plaintiff incorporates herein by reference his allegations contained in paragraphs 1-54, inclusive.

56.    Plaintiff has a liberty interest in pursuing his vocation as a public sector mail carrier, either as a contractor or an employee.

57.    Plaintiff suffers a continuing stigma or disability arising from official complaints and other actions initiated by Postmaster Rachel Shiflett in retaliation against him for his disclosures to the USPS Office of Inspector General ("OIG") concerning Ms. Shiflett's scheme to award paid extra trips to contractor postal carriers on a discriminatory basis.

58.    The complaints about Mr. Edens were never disclosed to him (he later learned of their existence through a Freedom of Information Act ("FOIA") request); and he did not have any meaningful opportunity to respond.

59.    The derogatory information from the investigation initiated by Rachel Shiflett led to a decision not to renew Mr. Edens' contract route and a decision by the Postal Inspection Service ("PIS") not to grant Mr. Edens a low-level security clearance leading to his termination as a probationary postal employee mail carrier, the position he subsequently held.

60.    Ms. Shifflet's influence and actions also resulted in Mr. Edens' bids on three USPS carrier contracts being rejected; and the persistent effect of his unsatisfactory background check makes it impossible for Mr. Edens to work as a postal employee.

61.    As a result of Ms. Shifflet's actions and influence, Mr. Edens has been denied the ability to work in his chosen career, as a public sector mail carrier.

WHEREFORE: Plaintiff requests this Court enter a judgment:

- declaring that Plaintiff has a liberty interest in pursuing his vocation as a public sector mail carrier, either as a contractor or an employee; and

- declaring that Defendant's actions deprived Plaintiff of his liberty interest by causing him a continuing stigma or disability to pursue his vocation; and

- vacating Defendant's August 21, 2019 finding of an unsatisfactory background investigation; and

- vacating Defendant's January 2018 adverse suitability investigation result; and

- ordering Defendant to investigate Postmaster Shiflett's retaliatory actions against Plaintiff; and

- ordering Defendant to correct the record in the January 24, 2018 suitability Investigative Memorandum; and

- ordering Defendant to reinstate Plaintiff as an employee; and

- awarding Plaintiff any other relief as the Court deems proper.

Dated: October 20, 2020                    Respectfully submitted,

   /s/ *Richard S. Toikka*
TOIKKA LAW GROUP, LLP
Richard S. Toikka, DC Bar # 416721
1101 30th Street, NW, Suite 500
Washington, DC  20007
202-337-7802 (phone)
202-337-7808 (fax)
rst@toikkalawgroup.com (email)

Rachel Rodriguez, DC Bar # 501324
515 N. Flagler Dr., Suite P300
West Palm Beach, Florida 33401
202-337-7810 (phone)
202-337-7810 (fax)
rlt@toikkalawgroup.com (email)

*Counsel for Plaintiff*
*William S. Edens*