## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                     )
**WILLIAM S. EDENS,**                                )
                                                     )
      **Plaintiff,**                        )
                                                     )
      **v.**                               )    **Case No. 20-cv-03038 (APM)**
                                                     )
**UNITED STATES POSTAL SERVICE,**                    )
                                                     )
      **Defendant.**                        )
_____              )

## <u>MEMORANDUM OPINION</u>

### I.    INTRODUCTION

Plaintiff William Edens is a former contract mail carrier for Defendant United States Postal Service ("USPS" or the "Agency") who in 1999 began working at the post office in Locust Grove, Virginia. Almost 20 years later, in 2018, Plaintiff was informed that his contract would not be renewed, and he eventually resigned. A different post office later hired Plaintiff, but Defendant terminated the contract after a background check uncovered misconduct at Locust Grove. Plaintiff then filed suit. Two claims remain before the court. First, Plaintiff alleges that Defendant violated the *Accardi* doctrine by failing to give him an opportunity to respond to the adverse information that led to the failed background check. Second, he contends that the termination deprived him of a liberty interest without due process.

Now before the court are the Parties' motions for summary judgement. For the reasons that follow, the court grants Defendant's motion and denies Plaintiff's cross-motion.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    *Locust Grove Post Office*

Plaintiff William Edens began working as a temporary contractor at the USPS post office in Locust Grove, Virginia, in 1999, and he received his first permanent contract the following year. *See* Def.'s Mot. for Summ. J. & Mem. in Supp. Thereof, ECF No. 59 [hereinafter Def.'s Mot.], Def.'s Stmt. of Material Facts Not in Genuine Dispute in Supp. of Def.'s Mot., ECF No. 59-1 [hereinafter DSOF], ¶¶ 1–2.  Plaintiff continued to work as a contract mail carrier at that location until March 2018, when he ceased providing the services required by his contract.  *Id.* ¶¶ 3–4.

Plaintiff's final years at the Locust Grove Post Office were marred by serious workplace misconduct, what he disingenuously dismisses as mere "disagreements and arguments with Agency management."  Pl.'s Mem. of P&A in Opp'n to Def.'s Mot. for Summ. J., ECF No. 62 [hereinafter Pl.'s Opp'n], Pl.'s Stmt. in Resp. to DSOF, ECF No. 62-1 [hereinafter Pl.'s Responsive SOF], ¶ 5.  For example, in February 2016, he was written up for "workplace violence/employee yelling on the work room floor at [the] postmaster," who was Francis Angilletta at the time.  Def.'s Mot., Contract Route Irregularity Rep. (Feb. 1, 2016), ECF No. 59-16, at 2; Pl.'s Responsive SOF ¶¶ 6–8.  On July 28, 2017, a subcontractor named Teona Scott reported that during an investigation into his conduct, Plaintiff approached her with clenched fists while yelling in an enraged state.  *See* Def.'s Mot., Scott Stmt. (July 28, 2017), ECF No. 59-13, at 1; Pl.'s Responsive SOF ¶¶ 9–10.

Beyond these incidents, Plaintiff's improper behavior chiefly focused on one specific person: Rachel Shiflett, who began working as the Locust Grove Postmaster in 2013. Pl.'s Responsive SOF ¶ 11.  The record is replete with evidence of obsessive and inappropriate

behavior by Plaintiff directed at Shiflett.  For example, in or around 2014, Plaintiff began texting Shiflett repeatedly, often outside of work hours.  *Id.* ¶ 13; Def.'s Mot., Stmt. of Rachel Shifflet, ECF No. 59-7, at 1.  When Shiflett stopped responding to these messages, Plaintiff started to message her on Facebook, leading her to block him.  Pl.'s Responsive SOF ¶ 13.  In or around December 2016, Plaintiff went to a restaurant where Shiflett worked a second job and left a note on her car that read "Please Don't turn on me When you get back."  *Id.* ¶ 14.  On December 22, 2016, Plaintiff took a photo outside that same restaurant and texted it to Shiflett along with the message "I was here, but didn't come inside."  *Id.* ¶ 17.

Plaintiff's inappropriate behavior did not stop there.  *See, e.g.*, *id.* ¶¶ 18–33.  He continued messaging Shiflett in January 2017, expressing the belief that there was a "clique" at the workplace from which he had been excluded.  Def.'s Mot., Facebook Messages from Plaintiff, ECF No. 59-8, at 4 ("I really feel most of the time you ignore/snub me.  I'm the one who comes to you to talk in your office. You run to the precious clique and talk to them.  If I didn't come to you I doubt we would even talk. Maybe that's the way it should be when you get back.  Just don't betray me."); *id.* at 5 ("I'm saying you're more friendlier with them.  Most of the time I have to run to your office to talk to you.  You talk to them on the floor.  You go to them.  And you do share more of your personal life with them.  It shows you are more comfortable around them than me."); *id.* at 6 ("You got tight with The Clique and the good workers don't trusts you that's the problem.").  Shiflett tried to get Plaintiff to stop, *id.* at 7, but his communications grew threatening.  *Id.* at 8 ("I'll bring this whole office down I think I hate the way your attitude towards him changed I think he's playing you for a f****** fool I think he's trying to weaken your defenses and that's why I'm telling you I hate that guy and I'm losing respect for you because you know what the f***er

said about you and yet it's like you're f****** leading him on and flirting with him it's about to go down.").

Plaintiff's behavior was not confined solely to online communications. The record reflects multiple in-person confrontations with co-workers. *See, e.g.*, Pl.'s Responsive SOF ¶¶ 6–8 (Angilletta), ¶¶ 34–36 (Shiflett), ¶¶ 38–39 (Scott). On October 20, 2017, Shiflett recommended that Plaintiff's contract not be renewed in part due to "[u]nacceptable workplace behavior, fits of rage, stalking, bullying, harassment, paranoia." Def.'s Resps. to Pl.'s Responsive SOF, ECF No. 65-1, ¶ 136; Pl.'s Opp'n, Pl.'s Decl., ECF No. 62-2, at 12.

2.    *Complaints and Investigations*

On October 27, 2017, Plaintiff filed a complaint with the Office of the Inspector General, alleging that Shiflett had engaged in contracting inconsistencies and favoritism, as she had inappropriately authorized extra trips for certain drivers. Pl.'s Responsive SOF ¶ 46. The investigation ultimately determined that Shiflett had violated Agency policy by engaging in unauthorized verbal contractual commitments with contractors but did not reveal that she had authorized extra trips in exchange for personal gain. *Id.* ¶¶ 47–48. Shiflett was issued a warning for her actions. *Id.* ¶ 49.

On November 14, 2017, Shiflett issued Plaintiff two Contract Route Irregularity Reports. *See* Def.'s Mot., Contract Route Irregularity Reps. (Nov. 14, 2017), ECF No. 59-14. Plaintiff confronted and threatened Shiflett about these reports. Pl.'s Responsive SOF ¶¶ 53 ("Plaintiff walked out of Shiflett's office backwards and starred [*sic*] her down the entire time. Shiflett told Plaintiff he was making this up in his head, Plaintiff told Shiflett, 'We will see I will get you.'"). Shiflett issued another Contract Route Irregularity Report to Plaintiff on December 11, 2017. *Id.* ¶ 55.

On January 11, 2018, Shiflett requested that the Postal Inspection Service investigate Plaintiff. *Id.* ¶ 56. Two Postal Inspectors interviewed him on January 23, 2018. *See* Def.'s Mot., Mem. of Interview (Jan. 23, 2018), ECF No. 59-17 [hereinafter Mem. of Interview]. The Inspectors described Plaintiff as "paranoid, agitated, hostile, and unaware of how to behave appropriately in the workplace." *Id.* at 3. Plaintiff disputes that characterization. Pl.'s Responsive SOF ¶ 60 (claiming he was "calm, cool, and relaxed"). The Inspectors let Plaintiff know that his contract would expire on July 1, 2018, and asked if he could handle working with co-workers until the termination of his contract. Mem. of Interview at 3. Plaintiff responded, "[W]e will see." *Id.*

The answer turned out to be "no." On March 30, 2018, Plaintiff breached his contract, ceasing work at the Locust Grove Post Office. Pl.'s Responsive SOF ¶¶ 63–64. On April 4, 2018, the Agency sent Plaintiff a letter demanding that he provide adequate assurances that he would fulfill his contractual obligations by April 7, 2018. Def.'s Mot., Ltr. from Agency (Apr. 4, 2018), ECF No. 59-20; Pl.'s Responsive SOF ¶¶ 66–67. Plaintiff did not respond to the letter, which he claims not to have received until May. Pl.'s Responsive SOF ¶¶ 65, 68. On May 21, 2018, the Agency emailed a letter to Plaintiff terminating his contract for default. Def.'s Mot., Ltr. from Agency (May 21, 2018), ECF No. 59-22; Pl.'s Responsive SOF ¶ 70.

Still, Plaintiff was not done harassing Shiflett. On July 31, 2018, he submitted an electronic consumer complaint that stated, among other things:

> I used to work at this office for 17 years and know the Post Master and a few carriers believe I am going to come into the office and kill them with a gun. Unfortunately, my carrier is one who buys into the game the Post Master and her cronies who are robbing the Post Office play. She may believe I will shoot her at my door. If this is the case, and she is playing the game where she is afraid I will kill her.

Def.'s Mot., Elec. Consumer Compl. (July 31, 2018), ECF No. 59-25; Pl.'s Responsive SOF ¶ 72.

### 3.     Lexington Post Office

On June 11, 2019, Plaintiff applied for a position as a rural carrier associate with the post office in Lexington, Virginia.  Pl.'s Responsive SOF ¶ 73.  He received a conditional job offer on June 17, 2019.  Def.'s Mot., Conditional Job Offer (June 17, 2019), ECF No. 59-27.  The offer stated that the "offer and any subsequent employment are conditioned on [his] meeting medical, eligibility, suitability, and background-investigation requirements," and that the "[f]ailure to successfully pass all requirements, including the background investigation, will result in the withdrawal of this conditional job offer or, if [he has] already begun [his] appointment, the termination of employment."  *Id.* at 1, 3.

On August 21, 2019, Plaintiff received a letter from the Postal Inspection Service, Security Investigations Service Center informing him that he had not passed the background investigation. Def.'s Mot., Ltr. from Sec. Investigations Serv. Ctr. (Aug. 21, 2019), ECF No. 59-28 [hereinafter Aug. 21 Ltr.].  The letter explained that he had been "adjudicated unfavorable" because he "was the subject of a Postal Inspection Service Investigation and resigned while under investigation for misconduct and inappropriate behavior in the workplace.  [Plaintiff] was pending dismissal for duty prior to resigning."  *Id.*  The letter notified Plaintiff that he had 30 days to appeal the decision. *Id.*  On August 28, 2019, Plaintiff received a second letter stating that he would be separated effective August 30, 2019.  Def.'s Mot., Ltr. from Postal Serv. (Aug. 28, 2019), ECF No. 59-29.

On September 20, 2019, with the assistance of counsel, Plaintiff filed an appeal. Pl.'s Responsive SOF ¶ 85.  He raised numerous arguments, including that he had not received a proper letter of inquiry, the explanation for his termination was factually incorrect, and the investigation of his conduct at Locust Grove was biased and retaliatory. *Id.* ¶¶ 86–91.  Six months

later, on March 24, 2020, the Assistant Inspector in Charge, Jessica Wagner, denied Plaintiff's appeal.  Def.'s Mot., Ltr. from Sec. Grp. (Mar. 24, 2020), ECF No. 59-34.

### B.    Procedural History

Plaintiff filed this lawsuit on October 21, 2020, asserting three claims: (1) lack of reasoned decision-making in violation of the Administrative Procedure Act (APA), (2) violation of the *Accardi* doctrine, and (3) deprivation of a liberty interest without due process.  *See* Compl., ECF No. 1.  On January 26, 2021, Defendant moved to dismiss all claims.  Mot. to Dismiss, ECF No. 8.  The court granted Defendant's motion in part, dismissing the APA claim but allowing Plaintiff to proceed on the remaining two.  Mem. Op. & Order, ECF No. 14.  After the close of discovery, the parties filed motions for summary judgment.  Def.'s Mot.; Cross-Mot. for Summ. J., ECF No. 63, Pl.'s Mem. of P&A in Supp. of His Cross-Mot. for Summ. J., ECF No. 63-1 [hereinafter Pl.'s Mot.].

## III.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  A dispute is "genuine" only if a reasonable factfinder could find for the nonmoving party; a fact is "material" only if it can affect the outcome of litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

In assessing a motion for summary judgment, the court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor.  *Id.* at 255.  To defeat a motion for summary judgment, the nonmoving party must put forward "more than mere unsupported allegations or denials"; its opposition must be "supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a

genuine issue for trial" and that a reasonable jury could find in its favor. *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015) (citing Fed. R. Civ. P. 56(e)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## IV.    DISCUSSION

### A.    *Accardi* Doctrine

The *Accardi* doctrine derives from a 1954 Supreme Court decision, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), in which the Court vacated a deportation order because it was issued without procedures conforming to the relevant agency regulations. "*Accardi* has come to stand for the proposition that agencies may not violate their own rules and regulations to the prejudice of others." *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005). To succeed on an *Accardi* claim, a plaintiff must show that (1) the agency "fell substantially short" of a procedural requirement and (2) the procedural failure prejudiced the plaintiff. *Sheble v. Huerta*, 755 F.3d 954, 957 (D.C. Cir. 2014) (quoting *Lopez v. FAA*, 318 F.3d 242, 248 (D.C. Cir. 2003)).

Plaintiff's *Accardi* claim is based on Section 521 of the U.S. Postal Service's Handbook EL-312, *Employment and Placement*. Def.'s Mot., Handbook EL-312, *Employment and Placement*, ECF No. 59-37 [hereinafter Handbook]. Section 521 provides in relevant part:

> Before applicants may be disqualified on the basis of derogatory
> information other than that in the application, they must be given an
> opportunity to comment on the information. This opportunity is
> provided by a letter of inquiry in which the facts are stated with
> enough specificity to enable the applicant to understand the details
> of the suitability concern. . . .

Handbook at 127–28.[1]  Plaintiff contends that "no letter of inquiry nor other opportunity to comment on derogatory information . . . was provided to [him] before he was disqualified by Defendant's letter of August 21, 2019."  Pl.'s Mot. at 5.  This failure, he argues, violated *Accardi*.  *Id.* at 7–9.

Defendant responds that the August 21 Letter was tantamount to a letter of inquiry.  *See* Aug. 21 Ltr.  It advised Plaintiff that he did "not meet the security requirements of the position" and identified the specific basis for that determination: he "was the subject of a Postal Inspection Service investigation and resigned while under investigation for misconduct and inappropriate behavior in the workplace" and "was pending dismissal for duty prior to resigning."  Def.'s Mot. at 9–10 (quoting Aug. 21 Ltr.) (alteration in original).  Moreover, the right to appeal gave Plaintiff the opportunity to "comment on the [derogatory] information."  *Id.* at 11–12.

The court need not decide whether the August 21 Letter satisfies Section 521's process requirements because Plaintiff fails on the second prong of his *Accardi* claim: demonstrating prejudice from any deviation.  Plaintiff contends that he suffered prejudice in two ways.  First, he argues that "[t]he lack of clarity and specificity in Defendant's letters made it impossible for Plaintiff to prosecute his appeal effectively."  Pl.'s Opp'n at 9.  Second, he complains that he "did not have access to an unredacted version of the Memorandum of Interview or the Investigative Memorandum and its Exhibits at the time he needed to appeal his unsatisfactory background check."  *Id.* (citations omitted).  The court is not persuaded by either argument.

As to the first, Plaintiff concedes that he understood what the August 21 Letter meant by "misconduct and inappropriate behavior in the workplace."  He testified at his deposition that it

---

[1] The court does not resolve the threshold matter of whether Section 521 applies to Plaintiff, who was in a probationary period when terminated.  Defendant maintains that this issue is "genuinely disputable, so it does not raise the argument on summary judgment."  Def.'s Mot. at 9 n.1.

referred to his workplace "outbursts" at the Locust Grove Post Office.  Def.'s Mot., Edens Dep., ECF No. 59-2, at 71:9–72:15.  Moreover, Plaintiff's assertion that the letter's ambiguity prevented him from "prosecut[ing] his appeal effectively" is entirely conclusory.  Pl.'s Opp'n at 9.  Even with the benefit of discovery, Plaintiff has not identified any way in which his appeal would have been different had he received greater clarity from the August 21 Letter.  *See id.*

What's more, the Appeal Letter shows that Plaintiff was able to mount a comprehensive defense.  With counsel's assistance, he argued that the August 21 Letter contained factual errors, specifically that the Postal Service investigation had resulted in a no-credible-threat finding and had ended by the time he had resigned.  Def.'s Mot., Appeal Ltr., ECF No. 59-30 [hereinafter Appeal Ltr.], at 4.  He also characterized the investigation as "flawed and biased" against him.  *Id.* Further, he challenged the Interview Memorandum summarizing his statements to investigators as "inaccurate in material respects" and offered multiple examples of the claimed inaccuracies.  *Id.* at 5.  Plaintiff has not identified what he would have said differently or added had the August 21 Letter contained more detail.  *See Lopez v. FAA*, 318 F.3d 242, 248 (D.C. Cir. 2003) (finding no prejudice from the agency's failure to provide 30-day advance written notice of a decision not to renew where the appellant "[w]ith the assistance of counsel [] submitted materials on several occasions in support of his defense to the original claim that his performance was unsatisfactory" and did not proffer the "other defenses [that] would have been presented with additional time").

Plaintiff's reliance on the D.C. Circuit's decision in *Mazaleski v. Treusdell*, 562 F.2d 701 (D.C. Cir. 1977), is misplaced.  There, the agency's regulations required a termination notice to contain the "specific basis for the action," but the plaintiff had been "informed only that he had the right to an administrative appeal and that the Director, Office of Personnel Management, had reviewed the [Involuntary Separation] Board's findings and recommendation fully and had

directed that appellant's commission be terminated effective June 6, 1975." *Id.* at 718. The government conceded noncompliance with the notice requirement, describing the error as "inadvertent." *Id.* Here, by contrast, Defendant has not acknowledged error and the August 21 Letter identified the derogatory information that led to Plaintiff's failed background investigation. *Mazaleski* is not controlling.

Plaintiff's second ground of asserted prejudice—lack of access to unredacted investigative records—likewise fails. For starters, Section 521 does not contain a right to receive original-source derogatory information. *See* Handbook at 127–28. Plaintiff therefore cannot establish prejudice from the denial of process he was not owed. Moreover, in discovery, Plaintiff received, in unredacted form, both the Investigative Memorandum and the Memorandum of Interview. *See* Def.'s Mot., Investigative Mem., ECF No. 59-6; Mem. of Interview. Yet he has not identified a single relevant passage in either document that was unknown to him at the time of his appeal. Nor has he asserted how any previously redacted portion now known to him would have added to or changed his appeal. *See Sheble*, 755 F.3d at 958 (finding no prejudice from an allegedly deficient termination letter where the plaintiff failed to explain how other information that he received "failed to give him adequate information with which to meaningfully contest his termination").

Having failed to create a genuine dispute of material fact as to prejudice, Plaintiff's *Accardi* claim fails.

## B.    Due Process Claim

The D.C. Circuit has recognized only two theories of recovery for an alleged denial of due process based on a liberty interest in employment: "reputation-plus" and "stigma or disability." *Langeman v. Garland,* 88 F.4th 289, 296 (D.C. Cir. 2023) (quoting *O'Donnell v. Barry*, 148 F.3d

1126, 1140 (D.C. Cir. 1998)).  Only a "stigma" claim is at issue here.  Such a cause of action is "predicated on a combination of an adverse employment action and a stigma or other disability that foreclosed the plaintiff's freedom to take advantage of other employment opportunities.'" *Id.* at 297 (cleaned up).  The plaintiff must prove that this combination either "formally or automatically excluded plaintiff from work on some category of future agency contracts or from other government employment opportunities" or had the effect of broadly "precluding plaintiff from pursuing her chosen career." *Id.* (cleaned up) (quoting *Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994)).

Plaintiff offers no serious argument as to this claim and largely makes a series of conclusory remarks based on pleading standards that are not applicable at this stage of the case. *See* Pl.'s Mot. at 10–12; Pl.'s Reply in Supp. of Pl.'s Mot., ECF No. 67 [hereinafter Pl.'s Reply], at 5.  Plaintiff cannot argue that he is precluded from "pursuing [his] chosen career" (in delivery services), as he remained gainfully employed in the industry even after losing his Lexington contract. *Langeman,* 88 F.4th at 297; *see* Pl.'s Mot. at 3 ("Even after being dismissed from the USPS, Plaintiff was able to perform satisfactorily in delivery positions for Fed. Ex. Ground, Door Dash, and Uber Eats.").

That leaves Plaintiff to argue that he was deprived of opportunities to work as a USPS contractor or employee.  Pl.'s Reply at 5.  Plaintiff must show that the government "has seriously affected, if not destroyed, his ability to obtain employment in [his] field." *Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995) (quoting *Greene v. McElroy*, 360 U.S. 474, 492 (1959)) (alteration in original).  Plaintiff fails to meet this "high" bar. *Id.*  Plaintiff bid for only two or three postal delivery contracts after his termination, despite there being 199 post offices within a 50-mile radius of his home.  Def.'s Mot. at 30–31; *id.*, USPS Locations (Dec. 22, 2023), ECF No.

59-38.  And he has offered no evidence that the reason for those limited rejections was the failed background investigation.  Such minimal proof is not enough to create a genuine dispute that the government "destroyed" his ability to work as a mail carrier.  *See Evangelou v. District of Columbia*, 639 F. App'x 1, 3 (D.C. Cir. 2016) (holding that plaintiff failed to satisfy high burden where he only applied to two jobs after his termination); *see also Langeman*, 88 F.4th at 297 ("Langeman may very well be excluded from working with the FBI again, but it does not necessarily follow that he would be unable to find employment with any other federal agency indefinitely; nor is any such exclusion or explicit prohibition present in his dismissal letter."); *id.* ("Langeman does not allege that he attempted to obtain employment elsewhere and was rejected because of Appellees' alleged conduct.").

## V.    CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment, ECF No. 59, and denies Plaintiff's Cross-Motion for Summary Judgment, ECF No. 63.

A final, appealable Order accompanies this Memorandum Opinion.

Dated:  September 30, 2025

Amit P. Mehta
United States District Judge